Base number 21-5009, Scotts Valley Band of Pomo Indians versus United States Department of the Interior, et al., Yocha Dehe Wynton Nation Appellant. Mr. Adams for the appellants, Mr. Bergen for the appellees, Scotts Valley Band of Pomo Indians, Ms. Jill Akimari for the federal appellees. Mr. Adams, good morning. Please proceed. Thank you, Your Honor, and may it please the Court. Yocha Dehe seeks to intervene in defense of the Department of Interior Indian lands opinion that denies the Scotts Valley Band's request for permission to develop a casino. As things stand today, the opinion shields us from significant harm to our governmental, cultural, and economic interests, harm that is set out in declarations that have never been disputed at any stage of this case. If Scotts Valley were to prevail on the merits, though, the opinion would be vacated. The matter would be returned to the Department of the Interior, and on remand, Interior would be prevented from applying the regulatory requirement on which the opinion is based. This is the significant historical connection requirement of 25 CFR 292.12b. In other words, if Scotts Valley wins, Interior cannot reach the same result on remand. We have a concrete particularized stake in the rule that's currently in place, and the threat and loss of that rule is imminent injury in fact. Under this court's precedent. On intervention as of right, the disputed issues are standing, impairment of interest, and inadequacy of representation. Unless the panel has other direction for me, I'll start with standing. Settled law, crossroads, fun for animals, gives us a standing test for a party intervening in defensive agency action. Intervener has standing if it benefits from the agency action. The action is challenged, and an unfavorable outcome would remove the benefit. And that's what we have here. The opinion benefits Yocha Dehe by protecting it from harm. Scotts Valley has challenged it, and if Scotts Valley is successful, again, the opinion would be vacated. Interior would be foreclosed from reaching the same result on remand. Appellee's primary reliance is on the Deutsche Bank case, but that decision does not control here. First of all, it is not a case involving intervention in defensive agency action. It predates crossroads, doesn't change the rule that the loss of a favorable agency action is itself an imminent concrete injury impact. Deutsche Bank is cited in Appellee's briefs for the proposition that if a threshold legal determination must come out a certain way, standing is less likely. But that statement had to do with whether the Deutsche Bank intervener had a contractual interest in the funds addition in the case, not the question of imminence of injury, which is what's at issue here. Here, there's no threshold determination that's needed to establish Yocha Dehe's interest in keeping the opinion in place. That interest exists right now. And then finally- Excuse me, just one minute. Interest in the matter under litigation is, if you want the mandatory intervention, what is your interest, legally protectable interest, that would be involved in this litigation? Yeah. So Your Honor, it is similar to the interest that was at stake in crossroads. So we have an interest in the rule that's currently in place. That interest is concrete and particularized in the injury. What is your legally protectable interest? Tell me how it's concrete. Tell me what the interest is that's being legally involved. Legally protectable interest that's involved in this litigation. Yeah. So peeling back the layers then, so what the rule blocks is significant harm to our economic, cultural, and governmental interests. The worst that happens eventually is that a competitor comes into the field. Now, is your desire to not have a competitor in the field, is that a legally protectable interest? It is in this case, Your Honor. Yeah, I've litigated a lot of cases from various tables on the questions that are protected by economic law like Sherman acts in this country. And the catchphrase has always been that American competition law protects competition, not competitors. And is there a legally protectable interest on the part of a competitor against the entry by a competitor? Well, I think this court's precedent is fairly clear that there is a legally protectable interest when there is a dispute about the imposition or removal of a regulation. Yeah. That's clear that if there is a change in the level of the playing field that you have an interest in the level playing field. But here, you're not asking us to protect a level playing field. You're asking us to protect the incumbent against entry of competitors into the playing field. And is that a legally protectable interest? It is, Your Honor. And let me explain why. So it goes back to the relief that Scotts Valley has requested. So Scotts Valley has requested to vacate the opinion. But they've also requested that on remand to Interior, Interior be enjoined from applying the significant historical connection requirement of 25 CFR 292.12B. And that regulatory provision was enacted to balance the interests of established tribes like Yochadi and restore tribes like Scotts Valley. So removing that regulation, which was designed in part to balance our interests, we think leads to a legally protected interest here. You know, Apele's other argument, of course, is that vacating the opinion would not give Scotts Valley the immediate right to build its casino. But Crossroads makes it clear that's not required. What matters under Crossroads is that the Indian lands opinion conclusively denies permission for Scotts Valley's project and prevents it from proceeding. And for Yochadi, that loss of that favorable decision is the imminent harm. And we would just point out that on that score, our position is even stronger than the Crossroads intervener. Crossroads, the federal defendant, had some discretion to reach the same result on remand. But here, again, a Scotts Valley victory would prevent Interior from reaching the same result on remand by prohibiting application of the significant historical connection requirement. I see my time is ticking down. So just very briefly on the impairment prong of the Rule 24 inquiry. The issue there is the district court overlooked circuit law saying availability of future proceedings is not enough to deny intervention, as well as, again, Scotts Valley's request to constrain Interior's decision making on remand. On adequacy of representation, the bar is low, and we clear it because our interests are more specific than the federal government's. That's been enough in cases like Diamond. And because the federal defendants now deny that we have any interest in the case at all. So it's more than doubtful that they could represent our interests as this litigation goes forward. Unless the panel has further questions for me, maybe I'll reserve the remainder of my time here. All right. Ms. Chilakamari. Good morning, Judge Henderson. Actually, by agreement with the federal defendants. Oh, all right. All right, Mr. Bergen. Thank you. Good morning, and may it please the court. Patrick Bergen for the Scotts Valley Band of Pomo Indians. Under this court's case law, an intervener must have standing. And to have standing, they must have an injury. And as Lujan stated, the injury must be concrete and particularized. It must be actual or imminent. The fundamental question before the panel today is whether vacating the Indian land's opinion and remanding the case back to interior would cause imminent harm to Yocha Dehe. Let me ask you, what about the request that the department be restrained on remand such that it could not make the type of argument that appellant maintains is protecting it here? Thank you, Judge Rogers. So two points on that. First of all, that claim in our complaint is our second claim. And that's not one of the claims that Yocha Dehe wishes to participate in. Second of all, hold on. You have to speak more clearly for me so I understand. Your client is seeking to have the department enabled on remand from requiring the conditions that are, as I understand it precisely, what appellant says protects it against action of your client seeking to build a competing casino. Does that change the legal analysis that the court has to apply? It does not, Your Honor. Under the regulations, the Scotts Valley has to show three connections to the land in order for it to be eligible for gaming if that land is taken into trust. One of those connections is called a significant historical connection. And that requires simply that the tribe demonstrate that it have a significant historical connection to the land. This regulation is not something that's contained in the statute. And so out of the many claims that the tribe has filed in its APA action, it has stated that this requirement is inappropriate under the Indian Gaming Regulatory Act. But we've also asked that the court remand because, for example, the department didn't follow its own regulations in making a decision with regard to Scotts Valley's case, or that it didn't consider the evidence in whole. Those are the tribe's third and fourth claims, and those are the claims that Yocha Dehe says it wants to participate in. I probably am not entitled to ask this question, but I'm going to anyway. Why do you care whether they intervene or not? Well, Your Honor, the restored lands analysis really does not contemplate the involvement of third parties. The issue is whether or not Scotts Valley itself has enough connections to the land that Scotts Valley's project could go forward. How would their intervention hurt your ability to raise that matter in the court? I'm probably not entitled to ask you that. You may have some strategy that you don't want to tell me. So tell me you don't want to answer, and I won't be mad at you if you don't want to answer that one. But I am curious as to why it matters to you, whether they get in or not. Well, I'll be frank, Your Honor. The reason it matters is because there is an Indian canon of construction that says that if there is an ambiguity in a statute that the courts are supposed to interpret that statute favorably toward Indian tribes, if there was more than one Indian tribe in a case, especially when they're on opposite sides, the court cannot possibly do that. So it's to our advantage to have only one Indian tribe in this case. Second of all, it's Scotts Valley's project. It's not Yocha Dehi's project. They were not the subject of the Indian land's opinion. They're not really referencing the Indian land's opinion. Their connections to the land do not matter to Scotts Valley's Indian land's opinion. Thank you. Thank you. I do want to point out that there actually may not be a benefit in this case at all to Yocha Dehi. And this kind of goes toward the eminence issue and also whether or not their injury is even concrete. As our brief points out, there are many hurdles for Scotts Valley to clear before it can open a gaming facility. And among these is an environmental review under NEPA and a class three gaming contract with the state of California. If the environmental review shows that the proposed casino footprint is too large and not suitable for the area, Scotts Valley may have to open a smaller casino, which would, of course, be less competitive, if even competitive at all. And if Scotts Valley is unable to obtain a gaming contract with California, it could still operate gaming, but it would essentially be only able to operate bingo. And a bingo hall would be no match to Yocha Dehi's Las Vegas-style resort. If there are no further questions, I think I'm at the end of my time. Thank you. Thank you. Thank you. Have I lost audio? Have I lost audio? I hear you. I can hear you. I hear you. All right. Ms. Cholokamari, please go ahead. Good morning, your honors. May it please the court. My name is Viru Cholokamari for the United States. Not all interests give rise to the right to be a party. And while Yocha Dehi may have a genuine concern about a potential future competitor, that concern is not a sufficient basis to make it a co-defendant in this APA challenge to a federal determination. Yocha Dehi has been given the right to participate below as an amicus, and we think that is a sufficient vehicle for Yocha Dehi to make its views known and considered in this court. I think there are a number of reasons. There are differences between being an amicus and being an intervener. Intervener has rights in the litigation that an amicus does not have. So giving them amicus status doesn't satisfy their potential needs, does it? It's true, your honor. There are differences. I think that in this particular case, though, that ability to participate in an amicus. I'm like Judge Rogers. I'm going to ask you to slow down, speak a little more clearly, please, counsel. So we think in this particular case, the ability to be an amicus actually does get them pretty far. For one thing, this is an APA case that will be decided on a record that's already been provided to the court. The agency's decision will have to rise or fall based on the arguments that the agency made already, not based on new evidence or post hoc rationalizations. The other thing to point out, though, is that one of the reasons I think why people want to become parties is the right to appeal. But under the DC Circuit's rule, under Occidental Petroleum, a remand to the agency would not be considered a final judgment that could be immediately appealable. So we think it matters less in a case like this, whether they have amicus. Amicus standing, I think, gives them all of the same ways to provide their views to the court. So the concern, as I understand it principally, is that the court not limit the department on remand to the conditions it can require. Why isn't that a live controversy here, in the sense that Pelland is not a stranger to the matter? I'm not sure that how we characterize it. The Applee-Scotts Valley has made its intention clear. So the ship is moving forward. And the terms of what the future proceedings involve are at stake. And yet, Pelland can speak as a friend of the court, but not actually be a party. I think I might have missed part of the question. But to start with, I think what the first part was about the ability to restrict the department's authority on remand. I do want to echo, I think, what Mr. Bergen noted, which was that Yocha Dehi has disclaimed any interest in arguing about that particular claim. JA-96 is where Yocha Dehi says that it wants to focus its participation on claims 3 and 4. Claims 2 of Scotts Valley's complaint is the claim that argues that the regulation is invalid. That would, if the district court found the regulation invalid, and if the government didn't appeal, that would limit the department's consideration on remand. But Yocha Dehi has actually said that it focuses its participation on claims 3 and claims 4. We know, counsel, but you know what parties want to focus on and what courts do. It's not always one and the same. So I just, this is not some stranger being concerned. That's all. And I understand why Judge Santel limited his question to Appellee Scotts Band. But it's a little different, I thought. Yes, I would say that, Your Honor, the question for the burden on the movement is to show that it's going to be injured if the case, if Scotts Valley is successful in the case below. And while Yocha Dehi certainly provided information at the administrative level, and that administration was considered, and Yocha Dehi may have concerns about the ultimate course of events in terms of the gaming casino, it is not going to be, there will be no real world impact. There will be no injury, even if the case is remanded. Well, I guess what I'm getting at is Judge Santel's point. There may be an injury, right? But the sort of protection that appellate is seeking is not one that the law provides. In other words, they'd like to operate competitor free. Oh, I understand, Your Honor. I think the district court assumed without deciding that competitive injury could serve as a concrete and particularized. It can, but the question that I had was, does the competitive injury that the law protects against include the injury simply of the presence of a competitor as opposed to some regulatory change that affected the levelness of the playing field? I don't think that's what you're addressing, and I think that's what Judge Rogers was asking you about. I understand, Your Honor. I believe that the cases do, you know, require competitive injury, and I think the test is about whether or not you're allowing a new entrant into the market. We didn't opine on this below, obviously, and the district court, I think, didn't as well. I think because the sort of first and foremost threshold question is even if you assume that this would be, would satisfy competitive injury, it's not imminent. It's a speculative whether or not the casino will even be built, will even, you know, get the relevant approvals that are necessary because the Indian lands opinion that's at issue in this case is simply the threshold determination. Oh, I understand. I just wonder about the implications of this type of holding in other situations. That's all. At what point does someone who sees the ship approaching and the ship is not turning around has to stand by until the ship is literally upon it? I understand. I think I would point the court to the Sikogin Chippewa versus Babbitt case, which is cited in, I believe it's cited in Scottsdale. Once again, counsel, if you'll listen to how slow I'm speaking, that's how slow I listen too. So if you could keep that in mind as you're talking, please. Yes, Your Honor. I would, on this question of kind of the, when can the parties stop a ship? I would point the court to the Sikogin Chippewa versus Babbitt case. It's cited in Scottsdale's brief. The citation is 214 F 3rd, 941. That's a seven circuit case, but it talks about this question of when you have a, a challenge to a, after the Indian lands opinion, I think at that point you were in a land and to trust decision. And there was a challenge by an intervener to the potential land and to trust, which is the next step in this process. And the court talks about how even then it's still speculative. And because we don't even know if there will be a casino in, and even if there is a casino, we don't know how competitive and whether it will actually be a successful casino. I think that's the best case I can point you to on that issue. All right. So you're saying the law is that you have to wait until the casino is built. I don't. And I think in terms of standing, it's an elastic concept. And the courts haven't been that clear about it. I do think it is clear that this is definitely too soon because we're at the threshold legal determination. And, you know, unfortunately because it is an elastic concept, I think, as you get closer to it, the controversy sharpens. I think it's fair to say that the law is clear that it's not necessarily the case. That you have to wait until the casino is built. And there is a question about the subsequent step. For example, if the department granted the land and to trust and actually took this parcel. Into, you know, took title of the parcel for the tribe. At that point, you might have a more concrete injury, but certainly I think the law is clear that this, at this point, When you only have an illegal opinion. An interior department opinion that is too soon in the process. I think that's fair to say.  I think that's fair to say. If there are no more questions, Mr. Adams. Why don't you take two minutes? Thank you, your honor. I appreciate it. So a few clarifications first. We have not disclaimed anything. As the federal defendants subsequently. We have said we would focus our participation on certain issues, but those two words are not the same and they don't mean the same thing. Mr. Bergen mentioned that Scott's valley has to show three connections. Just to sharpen the point that you and judge. How we're making. The opinion already says they made two. They meet two of them. And they're seeking to enjoin interior from applying the third. So the dispute is pretty sharp at this point. I think there was a mention of an environmental review process. Those hurdles are about how Scott's valley operates its project, not whether it can conduct gaming in the first place. And more generally, of course, crossroads makes it clear that the existence of additional agency decision-making. Does not preclude standing that was a case where there were several rounds of agency decision-making between the loss of the favorable agency action. And the underlying concern that the intervener had. You know, on competitive standing, the cases are clear. If the competitors are in the same market. Competitive standing exists. And here. It's undisputed that Scott's valley is. And, you know, there's a lot of evidence to support that. Seeking to enter. Core gaming market. And then finally. On this. Seventh circuit case that the federal police mentioned. You know, this is an issue where the distinction between the seventh circuit and this court really matters. Crossroads and fun for animals. Those two cases stand for the proposition that the loss of the favorable agency action itself constitutes. Eminent injury. In fact, there's no equivalent rule. Articulated in the seventh circuit case. And the nature of the harm and the evidence. At issue there were very different. Unless the court has further questions for me. I will rest there. All right. Thank you. Thank you. Thank you. Thank you. Madam clerk, if you would call the next case.
judges: Henderson, Rogers, Sentelle